UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

      Plaintiff,

  v.                                                                     Case No. 13-CR166

CHANDELL M. THARP,

      Defendant.

ORDER ADOPTING RECOMMENDATION
AND DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE SEIZED
DURING A WARRANTLESS SEARCH OF VEHICLE

On October 16, 2013, Magistrate Judge Aaron Goodstein issued a recommendation that defendant Chandell M. Tharp's motion to suppress be denied. Tharp moved to suppress evidence seized during a warrantless stop of his vehicle in Milwaukee on July 17, 2013, on the ground that the officers lacked reasonable suspicion or probable cause to believe that he was committing any offense, including a traffic offense. An evidentiary hearing was conducted by the magistrate judge on October 10, 2013, and Officer Theresa Janick and Sergeant Steven Herrmann testified for the government. Tharp, after consulting with his lawyer, declined to testify. Magistrate Judge Goodstein concluded that there was probable cause to believe that Tharp was driving in the area of North Martin Luther King Drive and West Hadley Street for "the purpose of inducing, enticing, soliciting, or procuring another to commit an act of prostitution," as well as making threats within the ambit of Wisconsin's disorderly conduct statute. Tharp filed a timely objection, and a supplement requesting a de novo hearing. The government opposes both submissions.

Having reviewed de novo Tharp's objection and the record in this case and hearing testimony during a supplemental hearing, the court will adopt the recommendation and deny the motion to suppress. *See* Fed. R. Crim. P. 59(e).

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. A seizure occurs whenever a law enforcement officer "accosts an individual and restrains his freedom to walk away." *Terry v. Ohio*, 392 U.S. 1, 16, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). Although officers may perform an investigatory stop if they have a reasonable and articulable suspicion of wrongdoing, they must have probable cause to make an arrest without first obtaining a warrant. *United States v. Sawyer*, 224 F.3d 675, 678 (7th Cir. 2000). Probable cause requires that the officer, under the totality of the circumstances, reasonably believes that a particular individual has committed a crime. *United States v. Oliva*, 385 F.3d 1111, 1114 (7th Cir. 2004) (quoting *United States v. Gilbert*, 45 F.3d 1163, 1166 (7th Cir. 1995)). It does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime. *United States v. Burrell*, 963 F.2d 976, 986 (7th Cir. 1992).

In this case, the collective knowledge doctrine as discussed in *United States v. Harris,* 585 F.3d 394, 400 (7th Cir. 2009), is particularly instructive. The doctrine provides as follows:

> The police who actually make the arrest need not personally know all of the facts that constitute probable cause if they reasonably are acting at the direction of another officer or police agency. In that case, the arrest is proper so long as the knowledge of the officer directing the arrest, or the collective knowledge of the agency he works for, is sufficient to constitute probable cause.

2

*Id.* (quoting *Tangwall v. Stuckey*, 135 F.3d 510, 517 (7th Cir.1998) (quoting *United States v. Valencia*, 913 F.2d 378, 383 (7th Cir. 1990)). It derives from *United States v. Hensley*, 469 U.S. 221, 105 S. Ct. 675, 83 L. Ed. 2d 604 (1985), where the Court wrote that "effective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another and that officers, who must often act swiftly, cannot be expected to cross-examine their fellow officers about the foundation for the transmitted information." *Id.*, 105 S. Ct. at 682 (quoting *United States v. Robinson*, 536 F.2d 1298, 1300 (1976)). The Seventh Circuit has applied the collective knowledge doctrine in cases where officers communicate with each other at the scene of an arrest. *United States v. Parra*, 402 F.3d 752, 764 (7th Cir. 2005).

To apply the collective knowledge doctrine, the court first considers what knowledge can be imputed to the officer arresting Tharp. Milwaukee Police Officer Theresa Janick testified that she was assigned to her department's anti-prostitution unit and had worked undercover as a prostitute for approximately 12 months. (Doc. 24 at 6-7.) As a result of her undercover work, she had been involved in approximately 100 arrests. (*Id.* at 8.) On July 17, 2013, Janick was working the 10:00 a.m. to 6:00 p.m. shift and was dressed in "fairly short" shorts, a v-neck shirt, and flat shoes, consistent with prostitutes in the area. (*Id.* at 9, 21.)

At approximately noon or 12:10, a black Cadillac approached with the passenger window down, and the occupant, whom Janick identified as Tharp, stated "I got what you need." Janick testified that she said "What do you got" to which Tharp replied "I got what you need." (*Id.* at 8-10.)

Janick crossed the street so that her cover officer could see, then Tharp made a U-Turn and stopped directly in front of her. Tharp approached Janick again and said "Get in." (Doc. 10.) Janick asked "What do you want?" Tharp replied "Get in." Again, Janick asked Tharp what he wanted. Tharp answered "You 'da Police?" Janick said "I'm not the police. I just told you I thought I saw a squad car." (*Id.*) Tharp said "f--- you" and Janick responded "f--- you." (*Id.* at 11.) Tharp then said "You better watch who you're talking to" and got out of his car. Tharp threatened, in an aggressive tone, to "beat [her] ass" as he approached the back of the car. (*Id.* at 11, 24.) Janick believes she responded "What are you going to do?" (*Id.* at 24.) Tharp then looked around and got back in his car and she "gave the predetermined signal for the squads to stop the subject in regards to loitering/prostitution." (*Id.* at 11.)

Janick testified that she believed Tharp's actions fell under Milwaukee Ordinance 106-35, Loitering-Soliciting Prostitutes. The Ordinance provides as follows:

> Any person who loiters or drives in any public place in a manner and under circumstances manifesting the purpose of inducing, enticing, soliciting or procuring another to commit an act of prostitution shall forfeit not less than $500 nor more than $5,000 or upon default of payment be imprisoned for not more than 80 days. Among the circumstances which may be considered in determining whether such purpose is manifested are the following: that the person frequents, either on foot or in a motor vehicle, a known area of prostitution; repeatedly beckons to stop or attempts to stop, or engages known prostitutes in conversation; or stops the motor vehicle the person is the operator of and picks up or attempts to pick up a known prostitute. The violator's conduct must be such as to demonstrate a specific intent to induce, entice, solicit or procure another to commit an act of prostitution. No arrest may be made for a violation of this section unless the arresting officer first affords the person an opportunity to explain the person's conduct, and no one shall be convicted of violating this section if it appears at trial that the explanation given was true and disclosed a lawful purpose.

Milwaukee, Wis., Code § 106–35 (2009)(Loitering–Soliciting Prostitutes).

Janick, who was dressed as other prostitutes in the area, based her assessment on the fact that Tharp was in a known area of prostitution, approached her and stopped his vehicle twice (Tharp made a u-turn to pull directly in front of her on the opposite side of the street), told her to get into his car, stated that he had what she needed, and asked "you da police?" Based on Janick's training and experience, Tharp's actions were indicative of people picking up prostitutes. (*Id.* at 13.) Janick testified that they [solicitors] request the prostitute to get in right away, and then ask whether she is the police. (*Id.*) Janick concluded Tharp was offering her narcotics in exchange for a sexual favor. (*Id.* at 21.)

Janick cited the Milwaukee Police Department's Standard Operating Procedure, which provides for mandatory booking for those who have been arrested for a violation of the city loitering-prostitution related offenses. (*Id.* at 13-14; Govt. Ex. A.) Further, Janick testified that Tharp spoke in an aggressive tone when he told her that he was going to beat her ass. (*Id.* at 26.) Threatening to beat Janick, with due regard for the strong language and threatening behavior, arguably falls within Wis. Stat. § 947.01, which provides: "Whoever, in a public ... place, engages in violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct under circumstances in which the conduct tends to cause or provoke a disturbance is guilty of a Class B misdemeanor." Wis. Stat. § 947.01. Consequently, there was sufficient evidence to establish that Tharp was soliciting prostitution and engaging in disorderly conduct.

Having found sufficient evidence to establish probable cause for Tharp's arrest, the court must determine whether this can be imputed to the arresting officer. Sergeant Herrmann testified that he is currently assigned to the Neighborhood Task Force, Street Crimes Unit and Fugitive Apprehension Unit. (Doc. 24 at 31.) He had been informed by

5

Janick and her partner that there was a high level of prostitution in that area.  (*Id.* at 32.) Herrmann was the officer supervisor assigned to Janick so he was monitoring the undercover operation from approximately one block west on 4th Street to make sure that standard operating procedure was followed.  (*Id.* at 33.)  Cover officers informed Herrmann by radio that the take down signal had been given then Herrmann told the other officers that he had the black Cadillac in sight. (*Id.* at 34.)  Herrmann activated his red and blue take down lights and approached Tharp's vehicle where it had stopped by the pumps and front entrance of a BP gas station. (*Id.*)  Herrmann testified that he told Tharp who he was and that he was stopping him for "what happened back there," and Tharp immediately said "I wasn't trying to pick up that girl." (*Id.* at 35.)  Four other officers were on the scene. (*Id.*)

Herrmann testified that there was a little tug of war on the door of the car, but that only lasted approximately ten seconds.  (*Id.* at 35-36.)  There were five officers on the scene, including Herrmann.  (*Id.*)  When Herrmann started to pat down Tharp, he asked whether Tharp had a carry concealed permit.  (*Id.*)  However, Herrmann was there to supervise the arresting officer.  (*Id.* at 38.)   During the supplemental hearing, defense counsel elicited testimony from Herrmann, and the other officers, Paul Hinkley, and Cary Doyne, regarding the absence of any video or memorandum documenting their interaction with Tharp and Tharp's statement.

Nevertheless, this record supports the conclusion that Janick had sufficient information when she gave other police officers a take down signal that triggered the arrest of Tharp.  Janick and the cover officers were working together in the anti-prostitution unit

of the Milwaukee Police Department, and her knowledge respecting Tharp's interactions with her may be imputed to other police officers based on the signal she gave to her cover officer regardless of whether she was wearing a wire or they heard the threat. Moreover, Janick specifically asked Tharp what he meant when he said "I got what you need" and Herrmann testified that he informed Tharp while he was being stopped. Nothing more is required for this court to conclude that the police had reasonable suspicion that Tharp had engaged in soliciting prostitution and had probable cause to arrest Tharp for that ordinance violation. Consequently, this court will not conduct an additional evidentiary hearing. Now, therefore,

    IT IS ORDERED that the recommendation of the magistrate judge is adopted.

    IT IS FURTHER ORDERED that Tharp's motion to suppress is denied.

    Dated at Milwaukee, Wisconsin, this 12th day of December, 2013.

                                        BY THE COURT

                                        /s/ C.N. Clevert, Jr.
                                        C.N. CLEVERT, JR.
                                        U.S. DISTRICT JUDGE